# Moore *v.* Pittsburgh & Butler Street Railway Company, Appellant.

*Negligence—Master and servant—Instructions — Electricity — Street railways—Dangerous appliances.*

The case was properly submitted to the jury in an action against a street railway company to recover damages for causing the death of plaintiff's husband, who was killed while working upon

the top of one of defendant's cars, in consequence of an electric shock which caused him to fall therefrom, where there was evidence that the instructions given to deceased with regard to the danger of his work were, of the most general character, and did not sufficiently inform him how to avoid necessary dangers from electric wires, and where there was evidence from which the inference could be drawn that defendant's vice principal turned electric current into the car upon which the deceased was working, when he knew or should have known that deceased would thereby be placed in a position of danger.

Argued Oct. 7, 1914. Appeal, No. 62, Oct. T., 1914, by defendant, from judgment of C. P. Butler Co., Sept. T., 1913, No. 64, on verdict for plaintiff in case of Anna L. Moore v. The Pittsburgh and Butler Street Railway Company. Before BROWN, MESTREZAT, ELKIN, STEW-ART, and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband.

The facts appear in the following opinion of GAL-BREATH, P. J., sur defendant's motion for a new trial and for judgment n. o. v.:

The jury before which this case was tried returned a verdict in favor of the plaintiff. The court is now asked to enter judgment in favor of the defendant notwithstanding the verdict. The plaintiff's deceased husband was in the employ of the defendant company at its car barns in Mars. This barn was in charge of John Clark, master mechanic of defendant company, whose assistant was Mr. Adair. On part of plaintiff it is alleged that the deceased met his death by reason of being thrown from the top of a car which had been brought into the barn for repairs, and on which he was working, by receiving an electric shock which threw him to the cement floor, causing injuries resulting in his death on the succeeding day. On part of plaintiff it is alleged that the defendant company's negligence consisted in not properly instructing the deceased as to the nature of his duties and the

dangers incident thereto and in not keeping and maintaining proper and safe appliances for the prevention of injury to its employees and in not supervising and looking after the deceased in his work so as to protect him from injury, and in not keeping in repair all the instrumentalities and places in which the said deceased was working.

The deceased had been in the employ of the defendant company in all, for a period of about one month, but not consecutively. His injury occurred on September 27th, 1912. That particular period of employment began on September 24th. His previous employment had not been in connection with the inspection and repair of cars, but in another department known as the shop. At the time of his injury, the deceased was working with Charles Angert, whose duty it was to inspect and repair cars brought into the barn. Angert testifies that Clark, the master mechanic, brought Moore to the department in which Angert was working and told him that Moore was to work with him and to show him what he was to do and that was all the instruction given by Clark to Angert relative to Moore. This was on Tuesday prior to the Friday on which the accident occurred. Angert testifies that he instructed Moore how to pull the switches in the switch box, by which the current was turned on and off from cars in the barn, explained those matters to him and also informed him that if he would touch a live wire he would be killed. The evidence discloses that one of the safety appliances for the protection of persons working on the cars was a ground wire, which, when in place, would knock out the fuse in case the current were turned on and thus prevent it from endangering those who were working on or about the cars. The evidence does not show that Moore was instructed as to the use of this wire or that it was in place at all when he was sent upon the car to work. The evidence indicates that it was not. Considering the dangerous character of the work and especially of the place where the work was to be done by

the deceased in the department to which he had been recently assigned, we think it might well be left to a jury to say whether or not the somewhat casual and general instructions which were given to the deceased by Angert, his fellow workman, were a full compliance on the part of the defendant company with the duties which it owed to him in order to his safety.

At the time Moore was working on top of the car Angert and another workman by the name of Rohrer were working beneath the car. Both of them were called away from the car to the shop which occupies the other side of the building and is separated from the department where Moore was working by a wall through which a door opened between the two departments. Rohrer says that there was no current in the car when he was called to the other department; that in from three to five minutes thereafter he was called back on account of the injury to Moore and that when he returned he thinks the light was in the car; that he went to the switch box and found that the switch was in, throwing power into the trolley. Angert testifies that he was called back for the same reason. He, too, says, that while he was working on the car, before being called to the shop department, the current was not on the car. He says that at the time of the accident he was employed at his bench in the other department about seventy-five feet away and that Clark, the master mechanic in charge of the barn, called on him to come. He says he saw Clark standing about thirty feet from the car calling and waving his hands and that when he went over Clark said to him that a man had got shocked. This statement of Clark, that a man had gotten shocked, was for the time being, excluded from the testimony for further consideration before admitting it. We are now persuaded that this evidence as to what was said by Clark who was a vice-principal of the defendant company at that time should have been received. Angert says that when he arrived at the car he found Moore on the ground and Adair seeking to straighten him out

on the cement floor. Angert testifies further that when
he arrived at the place of the accident Moore, Adair
and Clark were the only persons there. Angert testifies
that the fingers of Moore's left hand showed that they
had been burned and also that he detected the odor of
burnt flesh, that he had experienced these things before
and knew what the odor meant.

Inasmuch as the evidence tends to show that there was
no current in the line when Angert and Rohrer were
called away from the car and that within from three to
five minutes thereafter upon their return the current was
in the car, and inasmuch as the only persons besides
Moore who were present at the time were Clark and
Adair, the master mechanic and his assistant, it seemed
proper to submit these facts to the jury for such infer-
ences as might reasonably be drawn from them as to the
agency by which the current had been turned on; and in
this connection the jury were instructed in substance
that if they were reasonably led to the inference from
the facts in evidence that from the presence of Clark,
the master mechanic in charge of the barn and his as-
sistant, Adair, and no other person in position to turn
on the current, it was turned on by them or either of
them at a time when Moore was working on the car,
thereby endangering his life, that such act would be the
act of the defendant company. We are not persuaded
that there was any error in thus submitting this phase
of the case to the jury. Admittedly, Moore himself was
not in position to have turned on the current. The
ground wire was not in place to protect him and in the
apparent absence of any other agency by which it would
have been possible for the current to be turned on, it
seemed proper to leave to the jury the question whether
or not it had not been done by either Clark or Adair,
both of whom were present at the time. The absence
of other persons excludes the supposition that the cur-
rent might have been turned on by an outsider and thus
the fact that the switch box was not protected, apparent-

ly, as it should have been from such intrusion, does not seem an important fact in the case.

On part of the defendant company it is urged that there is no evidence in the case from which the jury could find that there was sufficient current in the line to cause a shock to Moore sufficient to effect the burns upon his hand or to throw him from the car. The evidence discloses that there was sufficient current, if turned on, to move the car. Not only had it been brought into the barn a short time before, but immediately after the accident, as the evidence is, the car was moved in order to give air to the injured man and the current was evidently sufficient for that purpose, and in these days of somewhat common knowledge of the force and effect of a current sufficient to move passenger cars, we think it was not improper to permit the jury, if in their judgment the facts warranted it, to draw the inference that the current in the line at the time was sufficient, if Moore were brought in contact with it, to throw him from the place where he had been working. It is further objected that there is no evidence that his death was the result of an electric shock. Whether death resulted immediately from the shock or from the injuries resulting is immaterial if the testimony was sufficient to warrant the jury in inferring and concluding that the injuries resulting from his fall were occasioned by his being thrown from the top of the car by reason of the turning in of the electric current.

We were not persuaded at the trial of the case that it was the duty of the court to direct a verdict for the defendant, nor are we now persuaded that it is the duty of the court to direct a judgment in favor of the defendant, notwithstanding the verdict. We think there is evidence which it was proper and necessary to submit to the jury on the question of whether or not Moore had been properly instructed as to the dangers incident to his employment in the means whereby he might protect himself from such danger and also to find whether or

not the current was turned in while Moore was working upon the car by some one representing the defendant company, and if so, whether or not his death resulted from the injury consequent upon coming in contact with a live wire. For this reason, the rule for judgment, n. o. v. is discharged.

Verdict for plaintiff for $4,848, and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant, and in refusing to enter judgment for defendant, n. o. v.

*Charles F. Patterson,* for appellant.

*Horace J. Thomas,* with him *W. Z. Murrin* and *Howard I. Painter,* for appellee.

PER CURIAM, January 2, 1915:
For the reasons stated by the learned president judge below, in his opinion discharging the rule for judgment non obstante veredicto, this case could not have been taken from the jury. As the two assignments of error raised no other question, the judgment is affirmed.